The brothers and sisters surnamed PAZ-TORRES, LUIS, FRANCISCA, MARCELINA, GEORGINA and JOSEFA ENCARNACIÓN, Plaintiffs and Appellants, v. The brothers and sisters surnamed FERNÁNDEZ-PAZ, ANTONIO, CARMEN LUISA, JUANA MANUELA and MARÍA DEL SOCORRO, Defendants and Appellees.

No. 10353. Argued April 5, 1951.—Decided June 22, 1954.

*Isaías M. Crespo* and *E. Martínez Avilés* for appellants. *Juan Enrique Géigel* and *Guillermo Silva* for appellees.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Luis Paz Urdaz executed an open will on October 23, 1934 before Notary Carlos del Toro Fernández, bequeathing to four of his nephews and nieces, plaintiffs-appellants herein, two pieces of real property situated in the city of San Juan, and designating as sole and universal heirs of the remaining estate—ten other pieces of real property—his other four nephews and nieces, defendants-appellees herein. Paz Urdaz died single in Río Piedras on February 13, 1948, leaving no issue or ascendants. Three days after his death plaintiffs brought this action assailing the validity of the will. The reasons for seeking annulment shall be examined in the course of this opinion jointly with the twelve errors assigned by plaintiffs who appealed from the judgment dismissing the complaint.

The first assignment is generic and bears on the reasons for annulment, which are thereafter enumerated in separate assignments. We shall also consider them separately.

■ The second error assigned—the first of the reasons for annulment—challenges the holding of the lower court that the will was executed in a single act.

We are concerned here with the formality of executing an open will in a *single act* as required by § 649 of the Civil Code (1930 ed.), which provides: "All the formalities mentioned in this article shall take place in a single act, and no interruption shall be allowed, except such a one as may be caused by a momentary incident. . . ."

Appellants do not specifically mention in their brief which step in the formality of execution in a single act was not observed, but they seem to contend—as evidenced by their analysis of the oral evidence as to the presence of the witnesses in the act of execution and signing the will—that the witnesses were not present when the testator stated that the will was in conformance with his wishes, which, of course, would be repugnant to the rule of execution in a single act. Judgment of November 18, 1918 of the Supreme Court of Spain. Although the Supreme Court of Spain has repeatedly held, in treating the matter of uninterruptiveness in a will, that "it should not be interpreted in the sense that the will must be drawn up and signed in a single session, but that only the reading of the will, the ratification by the testator, and the signing by the latter and other parties, must take place without any interruption whatever," Judgments of the Supreme Court of Spain of February 1, 1907, January 28, 1909, December 28, 1918, and December 29, 1927; 4 Castán Tobeñas, *Derecho Civil, Común y Foral*, 313; 3 Clemente de Diego, *Instituciones del Derecho Civil Español*, 66 (note 1), the findings of the lower court, supported by the evidence —which defeat appellants' contention in this assignment— were to the effect that . . . the testator . . . , the authorizing notary himself, and attesting witnesses Enrique Ramírez de

Arellano, Antonio Julián Baco and Tomás Caballero Woss, were present in the authorizing notary's office during the act of execution and reading of the deed in question; that the notary asked all persons present whether they wished to read the deed, which they had the right to do, and, upon waiving their right to read it themselves, he proceeded to read it audibly, whereupon the testator and the witnesses signed it.

██ The third assignment is that the court failed to declare the will null and void notwithstanding the fact that the notary did not set forth therein that in his opinion and in view of the statements made before him the attesting witnesses were not covered by any of the limitations prescribed by the Civil Code.

The only reference to the witnesses made in the open will in litigation reads thus:

"Thus he declares and executes in my presence and that of the attesting witnesses . . . , of full age, residents of this capital, where the execution takes place, *who know, understand and see the testator*. This deed having been read by me audibly, the testator ratifies and signs the same together with the attesting witnesses, and I, the Notary, attest that the witnesses are known to me and that all formalities prescribed by Article Fifth, Chapter One, Title Three, of the Revised Civil Code of Puerto Rico, have been carried out." (Italics ours.)

Section 644 of our Civil Code, 1930 ed., provides in its first paragraph:

"An open will must be executed before a notary and three suitable witnesses who see and understand the testator and of whom one at least knows how and can read and write."

According to that Section, the three witnesses attesting to the open will must be *suitable*. Such suitability, says Castán Tobeñas, stems from the nonexistence of the causes of incapacity enumerated in the Code, but, furthermore, in the case of an open will, it consists of the following two positive conditions: (1) that the witnesses, like the notary, see and understand the testator; (2) that at least one of the three

witnesses knows how and can write, so that he may sign for those who are unable to do so, or for the testator, and in order to avoid fraud and simulations. Castán Tobeñas, *op.* and *vol. cit.*, p. 307.

There is no provision in the Civil Code requiring the notary authorizing an open will to set forth therein that the attesting witnesses do not fall under any of the prohibitions enumerated by the Code to act as witnesses. As has been pointed out, the only requirements are that the three witnesses be suitable, that they see and understand the testator, and that at least one of them knows how and can write. Since there is no provision of positive law requiring the fulfillment, under pain of annulment, of the vice allegedly committed in the will according to the assignment under consideration, appellants cite in support thereof the Decision of February 12, 1901 of the Directorate of Registries of Spain, to the effect that "the notary shall set forth in the will, under pain of annulment, that the attesting witnesses are not, in his opinion and according to the statements made before him, upon demand made prior thereto, covered by any of the limitations prescribed by the Civil Code." Although that decision refers to wills, Dr. Castán Tobeñas invites attention to the fact that it lays down a *"rule absolutely contrary to the rule repeatedly established by that Directorate for acts inter vivos."* Castán Tobeñas, *op.* and *vol. cit.*, p. 287, referring to the decisions of October 23 and December 5, 1903, and February 5, March 4 and July 20, 1904. We are inclined to depart from the rule enunciated in that single decision of February 12, 1901, of the Directorate of Registries of Spain, and on the contrary ratify the holding of this Court in *Pacheco v. Heirs of Pacheco*, 66 P.R.R. 749, that any omission incurred by a notary in the execution of a will does not necessarily render the will void. See *Bardeguez v. Registrar of Guayama*, 27 P.R.R. 200; *Morales v. Registrar*, 35 P.R.R. 832; 5 Manresa, *Comentarios al Código Civil Español*, 5th ed., pp. 473, 475, 476; Castán Tobeñas, *op.* and *vol. cit.*,

pp. 392–394; Judgment of April 30, 1909 of the Supreme Court of Spain.

The omission in the case at bar does not render the execution of the will null and void, since the requirement established by the Civil Code in § 644 was substantially complied with by the appearance at the execution of three suitable witnesses—their suitability was never challenged—who knew, saw and understood the testator, to which the notary certified, as well as the fact that all formalities prescribed for such acts by the Civil Code were complied with.

■ The fourth assignment charges that the notary did not certify that the party thereto had, in his opinion, the necessary capacity to execute the will, a fact which was not ratified by the witnesses either. Section 645 of the Civil Code (1930 ed.) provides in its last paragraph:

"The notary shall always make it appear that in his judgment the testator is of the legal capacity necessary to execute a will."

Regarding the testator's capacity in the case at bar, the authorizing notary set forth in the deed the following:

"I certify that I know the appearing party personally, and by his statements, regarding age, status, profession and residence. He assures me that he is in full enjoyment of his mental powers, free speech and legal capacity required to execute a will, which he seems to have in the opinion of such witnesses and mine, the Notary; . . . ."

The provision of the Code above quoted is identical with the contents of the last paragraph of § 655 of the Spanish Code. In construing that provision, the Supreme Court of Spain has held that "the failure of the notary to set forth that, in his judgment, the testator had the necessary capacity, does not render the will null and void, for it is incidentally stated in the first part of that document that in the opinion of the notary and the witnesses it *seemed* that the testator was in the full enjoyment of his mental powers and legal capacity,

adding at the end that this was the opinion of the witnesses, since the law does not require that the precise words *in his opinion* be set forth in a special paragraph, since this expression amounts to *in his opinion, in his judgment, to his way of thinking.*" Judgments of April 6, 1896 and December 24, 1896.

The notary is under no duty to employ the same words used in § 645 of our Code (695 of the Spanish Civil Code). He may use different words conveying the same meaning, for the "essential point is not the words employed but that the notary *consider the testator as having sufficient capacity to testate.*" Manresa, *op.* and *vol. cit.*, p. 521; Judgments of April 6 and December 24, 1896 of the Supreme Court. See *Morales* v. *Registrar,* 35 P.R.R. 832. Therefore, in our opinion, the provisions of § 645 regarding the capacity of the testator were complied with by setting forth in the will here assailed, though in words different from those of the Code, that the testator gave assurance that he was in the free use of his intellectual powers and that he had the necessary legal capacity, and that in the opinion of the witnesses and the notary this statement was correct.

■ The fifth assignment alleges that the trial court erred in considering that the testator and the witnesses gave their approval to the will drawn up.

The pertinent legal provision is § 645 of the Civil Code, which provides:

"The testator shall declare his last will to the notary and to the witnesses. The will drawn in accordance with it and with the expression of the place, the year, the month, the day and the hour of its execution shall be read aloud in order that the testator may declare that it is in conformity with his intention. Both the testator and the witnesses may read the will themselves and the notary must inform him of this, his right. If the testator and the witnesses consent the will shall be signed in the act by the testator and by the others who can do it. . . . ."

Construing a similar provision, the Supreme Court of Spain has held that a will which only sets forth that the same was read, but fails to state that the testator informed himself of the content and gave his approval, is null and void; Judgment of July 14, 1899. And the testator's signature to show his conformity is not sufficient, for his conformity must be set forth. Judgment of November 19, 1915. See Manresa, *op.* and *vol. cit.*, p. 517; 3 Oyuelos, *Digesto*, p. 305; Medina y Marañón, *Leyes Civiles de España*, 1943 ed., p. 225; Clemente de Diego, *op.* and *vol. cit.*, p. 65.

The Code does not state how the testator shall set forth the required conformity. Sánchez Román points out that it must be explicit, categorical and unconditional, regardless of the breadth of the terms used to signify conformity, which would include mere affirmative monosyllables, provided it appears to be unquestionable to the witnesses and the notary and the latter can set it forth as true in the instrument. Sánchez Román, *Derecho Civil*, vol. 6 (1), 2d ed., p. 432; Castán Tobeñas, *op.* and *vol. cit.*, p. 311.

At the close of the will under consideration the notary set forth the following:

"This deed having been read by me audibly, the testator *ratifies* and signs the same together with the attesting witnesses." (Italics ours.)

The preceding quotation meets, in our opinion, the formal requirement of the Code. After reading the deed aloud, the notary states that the testator "ratifies it." *To ratify* means *to approve* or affirm acts, words or writings as being true and CORRECT. Dictionary of the Spanish Language, Real Academia de España, 1941 ed., p. 1068. By *ratifying* what was read aloud by the notary before him and the witnesses, the testator signified his conformity therewith as an expression of his will; so did the witnesses who signed the will together with the testator. Thus, compliance with the law was had in this respect.

■ The sixth assignment charges that the trial court erroneously held that the notary's failure to advise the testator and the witnesses of their right to read the will by themselves, does not render the will void. Appellants hold that the notary must set forth such warning in the deed, under pain of annulment. The pertinent provision of the Code is that portion of § 645, which provides that "Both the testator and the witnesses may read the will themselves and the notary *must* inform him of this, his right." (Italics ours.)

As respects the question of fact involved in this assignment, the trial court found, supported by sufficient evidence, that the notary made the corresponding warning. Regarding the need for expressing in the deed that this requirement was met, aside from the fact that nothing in the Code requires it, compliance was had therewith when the notary certified that "all the formalities mentioned in § 5, Ch. I., Tit. III, of the Revised Civil Code of Puerto Rico have been met," among which is the one under consideration.

■■ By the seventh assignment appellants charge that the trial court acted incorrectly in admitting parol evidence to cure the nullity of the will.

It is true, as maintained by appellants and as stated in *Ex parte Planis*, 42 P.R.R. 665, 666, that the form of wills is a solemn matter created by the statute. If the legal formalities are not complied with, the will is void. Such formalities are not mere evidentiary matters but substantive requirements. Without these requisites there is no will. However, the determination of whether or not the legal requirements have been met in a will, is a duty of the courts, 5 Manresa, *Código Civil Español*, 5th ed., p. 475; Judgments of the Supreme Court of Spain of May 23, 1905, *Jurisprudencia Civil*, vol. III, pp. 587–595, and of December 20, 1913, 167 *Jurisprudencia Civil* 256, since *compliance* therewith is a question of fact to be decided by the court before it can declare null and void a testamentary provision clearly and conclu-

sively expressing the testator's will.   167 *Jurisprudencia Civil* 256, *supra*.

It has already been said that the formalities which appellants allege were not observed were not the essential formalities required by law to be set forth in a will; in other words, they were not the *substantial* formalities which, if not met, render the will null and void *ab initio*, as distinguished from external solemnities or of form.   See Manresa, *op.* and *vol. cit.*, pp. 499–500.   The determination of whether or not they have been observed and the consequences thereof must be made by the court, since "in principle they should not be more or less than those necessary to render the last will genuine, secure and permanent."   Clemente de Diego, *Derecho Civil Español*, p. 52.   The rule which should govern such determination "does not regard all the solemnities of a will of equal importance, nor does it admit that the lack of any one of them always entails the penalty of nullity of the act. Although under § 687 of the Spanish Civil Code—says the Judgment of April 30, 1909—a will executed without observing the properly established formalities is null and void, it is necessary, according to a rule of good judgment and in view of the nature and significance of the former, to bear in mind the nature of such formalities in order to determine, with respect to their scope, the limit within which such formalities may be deemed to have been met, thereby harmonizing the known will of a testator and the external requirements of its expression."   Castán Tobeñas, *op.* and *vol. cit.*, p. 392; Manresa, *op.* and *vol. cit.*, p. 473.

The lower court having found, by the evidence offered, that the external formalities were fully complied with, and that the only substantial formality which was not, as contended by appellants, appears on the face of the document, we cannot agree with appellants that the court committed the error assigned by permitting the nullity of the will to be cured by parol evidence.   No substantial formality of those

which render wills null and void was cured by the evidence believed by the lower court.

█ The eighth assignment assails the weighing of the evidence. After a careful examination, we are not convinced that the court committed manifest error in weighing the evidence. We will not therefore disturb its findings. *López* v. *Bravo*, 68 P.R.R. 470; *Maldonado* v. *Quetell*, 68 P.R.R. 390; *Rosado* v. *Rosario*, 69 P.R.R. 158; *Bird* v. *Bird*, 69 P.R.R. 342; *Rivera* v. *Hernández*, 70 P.R.R. 521; *Varela* v. *Fuentes*, 70 P.R.R. 838; *Gómez* v. *Díaz*, 72 P.R.R. 678; *Correa* v. *Mario Mercado e Hijos*, 72 P.R.R. 77.

The ninth assignment charges that the lower court erred "in not taking into consideration, after evidence on the matter was introduced, the substantial defects of form of the will . . . even though such defects of nullity were not raised in the averments." Even though this assignment could be dismissed for other reasons, it suffices to say that we have in this proceeding considered on their merits all the grounds for nullity on which plaintiffs' challenge is founded; there is not in our opinion any basis on which their action may be predicated.

█ By the tenth and eleventh assignments the appellants charge that the lower court acted incorrectly in not permitting witness Luis Paz Urdaz, one of the plaintiffs herein, to testify on the conversation he had with his uncle, the testator, as to whether or not he had executed a will and as to other pertinent particulars, and in excluding as evidence correspondence between the testator and his sister, the plaintiffs' mother and defendants' aunt.

For a better understanding of these two assignments, let us examine the circumstances around which such assignments allegedly revolve. Plaintiffs alleged, among other grounds already considered in the course of this opinion, that the will was executed "by deceit, or pressure of deceit, influenced by words or plotting of each and every defendant, who induced

the testator to execute the will in question, to plaintiffs' prejudice, by resorting to language which would discredit them or accuse them of alleged ingratitude toward the testator, making the latter believe that plaintiffs spoke ill of the testator and that they sought to injure his interest; and that in order to accomplish their purpose, they went to live with the testator in his own house in Río Piedras, P. R., where they constantly plotted against and discredited plaintiffs in an attempt to induce the testator to execute the will in question by deceit, all of which defendants did with malice."

In another paragraph of the complaint they alleged that "the predecessor did not execute the will in question as a strictly personal act but left it to the discretion of defendants, who intervened in the allotment of the shares belonging to the heirs."

In support of the preceding averments, the evidence offered consisted of the testimony of Luis Paz, one of plaintiffs, tending "to impress the mind of the court with the fact that these families had had disagreements for some time, and that those disagreements arose at the time the deed was executed and lasted until the testator's death." In that connection, the witness was asked: "During one of those visits you paid to your uncle, did he say whether he had executed a will or not?" Objection having been raised on the ground that the question was irrelevant since, according to previous preliminary questions, the witness had testified that his visits to his uncle who was sick at the time had taken place "sixth months prior to his death"—the will was executed on October 23, 1934 and the testator died on February 14, 1948—the court admitted the question and the witness then replied: "He told me he had executed a will." Thereupon defendants moved to strike out the testimony on the ground that the witness should not be allowed to testify on statements made to him by the testator, invoking the prohibition contained in

the Act of March 10, 1904. The court sustained the objection. [1]

Plaintiffs also offered some letters—their admissibility was objected to by defendants for the same reason alleged above— which the testator had written to his sister-in-law Cristina Torres widow of Paz, mother of plaintiff and witness Luis Paz, and to the latter's sisters, and a letter evidently addressed to the witness. Defendants' objection having been sustained, these letters were incorporated in the record on appeal as evidence offered and not admitted.

In support of these two assignments, plaintiffs maintain that the Act of March 10, 1904, providing who shall be competent witnesses, [2] did not render inadmissible the evidence offered and excluded by the court, since this action did not arise out of any transaction with the testator, but merely involved, as respects the ground for nullity with which we are now concerned, circumstances tending to prove that there was deceit, which rendered the will null and void.

Although in order to dispose of these two assignments it is unnecessary to decide the question in the manner raised by appellants, we concede that, since we are not concerned here with statements made by a deceased person in an action based on *transactions* had with the latter [3]—see annotations

---

[1] Plaintiffs did not move for leave to cross-examine the witness in order to set up separate testimony that could be considered on appeal as evidence offered and unadmitted.

[2] That Act provides:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this Section shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

[3] The cases of *Wilcox v. Axtmayer et al.*, 23 P.R.R. 319; *De la Rosa v. Heirs of Quevedo*, 47 P.R.R. 165; *Sánchez v. Sánchez*, 58 P.R.R. 580; *Rodríguez v. Arocho*, 62 P.R.R. 672; *Cestero v. Heirs of Eduardo Cestero*, 35 P.R.R. 908; *Lezcano v. Heirs of Sifonte*, 42 P.R.R. 387; *Morales v. Ceide*, 51 P.R.R. 25; *Viera v. Heirs of Goitía*, 60 P.R.R. 637; *Boscio*

115 A.L.R. 1425, 1426; 146 A.L.R. 250 *et seq.;* and 173 A.L.R. 128 *et seq.*, which sum up the authorities on the scope of the term *transactions*, favorably and adversely to appellants' contention—such statements, if inadmissible for other reasons, could have been verified through the person to whom they were made. However, in view of the nature of this action and of the specific ground now under consideration for challenging the will—deceit—it is evident that Luis Paz' testimony on the conversation he had with the testator six months prior to his death and about thirteen years after the will was executed, was not legally admissible evidence aimed at establishing the charge that the execution of that testamentary act was vitiated by deceit. Neither were the letters admissible, written in 1942 and 1943—eight and nine years after its execution—which make no reference either to the will, or to its execution, or to any circumstance having any relation thereto, or any statement on the conduct of defendants, or any of them, in connection with the will; those letters dealt with matters altogether different.

The basis for challenging a will for deceit is found in § 622 of the Civil Code, equivalent to § 673 of the Spanish Civil Code, which provides: "A will executed under duress, deceit, or fraud shall be void." The Supreme Court of Spain said in the Judgment of October 25, 1928, that "The deceitful act is marked as the product of shrewdness, machinations, or artifice employed for the purpose of deceiving the person performing the act on behalf of another, who may receive the benefit of the purpose sought and achieved by such unfair procedure; it is therefore the product of deceit, or the result of the lack of truth resorted to by one who intends to, and succeeds in, defeating the law, or depriving a person of his legal rights, thereby committing fraud with consequential and considerable damages," it being necessary "that the heir per-

v. *Vilá*, 67 P.R.R. 567, and *Pereles* v. *Martinó*, 73 P.R.R. 793, dealt one way or another with statements made by a deceased person in actions properly involving *transactions*, meaning contractual juridical relations or acts.

form acts tending to induce the predecessor, by fraud, to execute a will. . ." Deceit can not be presumed; it must be established by the person invoking it, fully warranteeing "the existence of fraudulent machinations or insidious words causing sufficient deceit or error," Judgment of March 22, 1941, incidental to the inducement or subjection of the will. There is no evidence in the record, and none was offered, other than the testimony of plaintiff and witness Luis Paz, tending to establish facts or acts committed by defendants previous to or coetaneous with the execution of the testamentary act, which might establish the deceit or machinations necessary to render the will null and void. Irrespective of the fact that a mere statement made in haste by the testator would not constitute sufficient evidence to establish deceit, the fact is that the excluded oral testimony would have dealt with statements made by him thirteen years after executing the will, and, as respects the written evidence, eight or nine years thereafter. Nor does it appear from the evidence, or from any offer of evidence, that the testator intended to revoke his previous testamentary disposition which, being an act of his own volition, he could have done any time prior to his death.

The aforesaid errors therefore were not committed. The twelfth, which is generic and merely an assignment which appellants fail to argue, does not call for discussion.

The judgment will be affirmed.